UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH JOHNSON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:       10-1146**<br>**C/W      10-1549** |
| **SAMSUNG ELECTRONICS AMERICA,<br>INC., ET AL.** | **SECTION: "K" (4)** |

## ORDER

Before the Court is a **Motion to Compel Discovery (R. Doc. 92)** filed by the Plaintiffs, Elizabeth Johnson, individually and o/b/o Devontre Young and Lashaun Johnson, individually and o/b/o Dayasia Benion seeking an Order from the Court compelling the Defendants to provide more complete responses to their outstanding discovery requests.  The Defendants oppose the motion. (R. Doc. 103.)  This motion was heard with oral argument on **Wednesday, June 15, 2011**.

## I.    Background

This diversity action arises out of a fire that erupted in a mobile home on May 21, 2009.  (R. Doc. 1, ¶ 5.)  Elizabeth Johnson, LaShaun Johnson and their minor children, Devonte Johnson, Ladarius Johnson, Devontre Johnson, and Dayasia Benion were sleeping.[1]  *Id.*  As a result of the fire, Devonte Johnson and Ladarius Johnson were fatally injured.  Devontre Johnson and Dayasia Benion

---

[1]Despite the similar spelling, Devonte Johnson and Devontre Johnson are two different individuals.

were severely burned.

The Plaintiffs allege that the fire was caused by an air-conditioning unit located in the mobile home.  The Plaintiffs contend that the fire was not the result of any fault on behalf of the Plaintiffs; instead it was caused from defects in the air conditioning unit.  (R. Doc. 1, ¶ 7.)  Specifically, the Plaintiffs contend that the air conditioning unit was defective and in an unreasonably dangerous condition by reason of defective design and/or manufacture.  (R. Doc. 1, ¶ 8.)

The Plaintiffs further allege that prior to the date of the fire, the Defendants had knowledge of the potential for the air conditioner to catch fire but failed to take reasonable and appropriate steps to remove the product from commerce and failed to provide a warning to consumers and/or failed to take the appropriate steps to recall the dangerous appliance.  (R. Doc, 1, ¶ 11, ¶ 10, 11.)

As to the instant motion, on October 13, 2010, the Plaintiffs served their discovery requests on the Defendants.  The discovery requests were propounded prior to the positive identification of the air conditioning unit at issue.  The air conditioner was identified shortly thereafter as a  Model ASW06LKS1, a 6,000 BTU unit,  which was branded as a General Electric product but was designed and manufactured by Samsung.  The air conditioner was manufactured from December 2006 to early 2007 and sold in the 2007 cooling season.  Some legacy units were sold in the 2008 cooling season.  Walmart sold the product for about two (2) years.

The requests at issue sought documentation regarding every air conditioning unit manufactured and distributed by the Defendants.  The Defendants objected to the requests on various grounds.  Subject to their objections, the Defendants produced information relating to the Model ASW06LKS1.  The Plaintiffs contend that the Defendant's limited responses are incomplete and filed the instant motion seeking to compel supplemental responses.

In addition, on May 12, 2011, the Plaintiffs conducted a Rule 30(b)(6) Corporate deposition of Samsung. Jeong Hwan On ("On"), Samsung's Director of Products Safety, was designated as the Corporate Representative. During the course of his deposition, On was directed by his counsel to refrain from responding to certain questions. The Plaintiffs contend that On was inappropriately instructed to refrain from responding and therefore should be compelled to provide responses to the various questions posed.

## II.    Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(c). In assessing whether the burden of the discovery and

outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.*

## III.   Analysis

### A.      Requests for Production of Documents

The Plaintiffs object to Samsung's responses to Requests for Production 2[2], 8[3], 15[4], and 16[5], General Electric's responses to Requests for Production 2[6], 10[7], 17[8], and 18[9], and Walmart's

---

[2]Request for Production No. 2 sought "any and all documents in which a report of fire involving a Samsung air conditioner was made."

[3]Request for Production No. 8 sought "any and all documents concerning the recall of any air conditioners designed, manufactured, distributed, or otherwise identified as a "Samsung" air conditioner.

[4]Request for Production No. 15 sought "any and all documents related to any lawsuit filed or against Defendant concerning a fire alleged to have been started by an air conditioner which was designed, manufactured, distributed, or sold by any Defendant."

[5]Request for Production No.1 6 sought "any and all documents in which a person or entity reported or alleged that a fire that may have originated or been caused by an air conditioner which was designed, manufactured, distributed, or sold by Defendant."

[6]Request for Production No. 2 states, "produce and an all documents in which a report of fire involving a Samsung or GE air conditioner was made."

[7]Request for Production No. 10, states "produce any and all documents concerning the recall of any air conditioners designed, manufactured, distributed, or otherwise identified as a "Samsung" or "GE" air conditioner."

[8]Request for Production No. 17 states, "produce any and all documents related to any lawsuit filed by or against Defendant concerning a fire alleged to have been started by an air conditioner which was designed, manufactured, distributed, or sold by any Defendant."

[9]Request for Production No. 18 states, "Produce any and all documents in which a person or entity reported or alleged that a fire that may have originated or been caused by an air conditioner which was designed, manufactured, distributed, or sold by Defendant."

responses to Requests for Production No. 2[10], 8[11], 15[12], and 16[13]. These requests sought documentation relating to complaints, recalls, and lawsuits regarding fires allegedly caused by air conditioners.

The Defendants responded to the discovery requests with numerous objections, including over breadth, work product privilege, common interest privilege, relevance, and unduly burdensome. Subject to its objections, the Defendants provided documentation relating to the ASWO6LKS1, the air conditioning unit at issue.[14] Further, as to the requests which sought documentation relating to recalls and complaints, the Defendants provided documentation for the successor model for the 2008 cooling season, Model ASW06LLS1, and for other 6,000 BTU air conditioners.

In response to the requests seeking documentation relating to claims and litigation, however, the Defendants limited their response only to the ASW06LKS1 model because: (1) it is the model at issue in this case, (2) the plaintiffs have not proffered any evidence or basis for finding that any discovery of any claims or litigation are relevant to the issues involved in this particular case, and (3) plaintiffs have failed to show that "other models share pertinent characteristics with the [product]

---

[10]Request for Production 2 states, "produce any and all documents in which a report of fire involving a Samsung air conditioner was made."

[11]Request for Production No. 8 states, "produce any and all documents concerning the recall of any air conditioners designed, manufactured, distributed, or otherwise identified as a "Samsung" or "GE" air conditioner."

[12]Request for Production No. 15 states, "produce any and all documents related to any lawsuit filed by or against Defendant concerning a fire alleged to have been started by an air conditioner which was designed, manufactured, distributed, or sold by any Defendant."

[13]Request for Production No. 16 states, "produce any and all documents in which a person or entity reported or alleged that a fire that may have originated or been caused by an air conditioner which was designed, manufactured, distributed, or sold by Defendant."

[14]The Court notes that it was not until after the discovery requests were propounded that the air conditioning unit was identified as a ASW06LKS1, a 6,000 BTU air conditioning unit which was manufactured by Samsung but branded as a General Electric product.

at issue."  (R. Doc. 96, p. 10.)

At the hearing, the Plaintiffs conceded that the requests, as submitted were over broad.  The Plaintiffs further identified, for the first time, that they believe that the fire originated in the control box of the air conditioning unit.  The Plaintiffs therefore agreed to limit their requests to documents pertaining to fires suspected to result from the control box in air conditioners.  The Plaintiffs argued that they were entitled to documents pertaining to all fires suspected to be caused from the control box in air conditioning units because the control box on every air conditioner is the same.  The Plaintiffs further offered to cure the over breadth of the request by limiting the scope temporally to 1994 through 2008, which represents the time that Samsung manufactured air conditioners for General Electric.

In response, the Defendants renewed their over breadth objections.  The Defendants argued that contrary to the Plaintiff's assertions, all control boxes on air conditioning units are not the same.  The Defendants contended that the control box is not an individual component, and instead is made up of several different parts and that the configuration of the various sub-parts of the air conditioners vary from model to model.  Further, some control boxes are allegedly electric while others are manual.  The Defendants further contended that because UL Standard 484 made any unit manufactured after 2004 different and unique from its predecessors, information regarding units manufactured from 1998 through 2004 are irrelevant.

The Defendants thereafter offered to provide documentation to the Plaintiffs for any air conditioner that has the exact same control box configuration as the Model ASWOLKS1.  The Defendants further clarified that the "exact same configuration" means that all of the subject parts not only be installed identically to the Model AWOLKS1, but that each and every sub-part be

6

manufactured and distributed from the same company as the Model ASWOLKS1.  Counsel for the Defendants were unable to identify any other model with the exact same configuration at the hearing and indicated that they would have to confer with their client to determine whether any exist.

The Court sustained the Defendant's objection to the Plaintiff's attempt to cure the problem by limiting its scope between 1994 through 2011.  The Court noted that on August 1, 2004, the UL released new standards for air conditioning units.  (*See* R. Doc. 96-3, Exh. Q.)  According to the Release:

> A cord-connected single phase room air conditioner shall be provided with a factory installed LCDI or AFCI protection to reduce the risk of fire due to arcing faults in the power-supply cord.  The LCDI or AFCI shall be installed as an integral part of the attachment plug or located in the supply  cord within 300 mm (12 in.) of the attachment plug. . . Compliance with [this change] shall be accomplished by the use of an integral protective device that de-energizes all current-carrying parts when arcing faults are detected within the power supply cord.  The AFCI and LCDI shall comply with the Standard for Arc-Fault Circuit Interrupters, UL 1699.

(R. Doc. 96-3 p. 81, Exh. Q.)  Further, the new standard required that "[a] cord connected room air conditioner shall be marked to indicate that a damaged power supply cord must be replaced with a new power supply cord obtained from the product manufacturer and not repaired."  (R. Doc. 96-3 p. 181, Exh. Q.)

The Court finds that the UL 484 standard change bears directly on the electrical power to the machine that is funneled through the power cord into the control box.  The purpose of this change was to reduce the cause of fires which bears directly on the subject matter at issue.  The Court finds that air conditioners manufactured after this change are different and unique from their predecessors.  As such, any information regarding air conditioners which pre-date this change are irrelevant as the subject air condition was manufactured in 2006 and sold in 2007.

The Court further rejected the Defendant's suggestion that it would provide information on only those air conditioning units which have the control boxes with the "exact same configuration" as the subject model.  The Court found the suggestion too narrowly tailored.  The Court therefore found that the requests should be limited to fires arising from control boxes in 5,000, 6,000 or 8,000 BTU air conditioners which were manufactured subject to the 2004 UL standard.  Therefore, the Court orders the Defendants to supplement its responses to the contested discovery requests with documents within these parameters.

**B.    Instructions Not to Answer Deposition Questions**

The Plaintiff also seeks to compel responses from Jeong Hwan On, Samsung's Director of Product Safety, who was instructed not to respond to various questions during the course of his Rule 30(b)(6) deposition on May 12, 2011.

Prior to On's deposition, Samsung served objections to the various topics included in the notice.  (*See generally*, R. Doc. 96-2, Exh. H.)  Within these objections, Samsung noted that the Notice of Rule 30(b)(6) Deposition included Attachment A, which described 32 general areas of examination, and Attachment B, which described 198 general areas of examination.  (R. Doc. 96-2, Exh. H, ¶ 1.)  Samsung thereafter provided general objections including the following:

> [Samsung] objects to the extent that the Plaintiff's Notice of 30(b)(6) Deposition requests disclosure of documents or information protected by attorney-client privilege, the work product doctrine, trial preparation materials, the common interest privilege or expert testimony. [Samsung] claims an absolute attorney-client privilege wherever Plaintiffs' requests encompass such documents or communications.

(R. Doc. 96-2, Exh. H, ¶ 4.)  Samsung's objections, however, did not specifically identify particular areas of inquiry and instead were generally lodged.

The Defendants contend that the various questions in which it ordered On to refrain from

responding are protected by the attorney-client privilege.  In particular, the Defendants contend that under the Louisiana Code of Evidence, communications between representatives of the client or between the client and a representative of the client are protected under the attorney client privilege. Furthermore, the Defendants contend that these communications are protected by the work product privilege because these communications were conducted in order to prepare On for his 30(b)(6) deposition.

Under Rule 30 of the Federal Rules of Civil Procedure,

An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed.R.Civ.P. 30(c)(2).

As a preliminary matter, the Court notes that the Defendants did not make any specific objections on the record during the deposition to the questions at issue in this matter.  The grounds for the objections were not addressed, and instead defense counsel merely responded "Objection. Don't answer the question."  However, the Plaintiffs have not challenged the Defendants' failure to adequately state their grounds for objections.

### 1.    Opinion Testimony

First, Mr. On was asked, "[w]hat caused this fire?"  (R. Doc. 92-2, p. 17.)  On was instructed to refrain from answering the question.  The Defendants contend that they properly instructed the deponent not to respond to the question because it sought opinion testimony.  The Defendants contend that a corporation is a legal fiction which is incapable of providing opinion testimony.  The Defendants contend that this question is protected by the attorney-client privilege.

The Court first notes that Rule 30 provides only three situations in which a deponent may be instructed to refrain from responding.  Namely, a deponent may be instructed to refrain to preserve a privilege, to enforce a limitation ordered by the Court, or to present a motion under Rule 30(d)(3).  Fed.R.Civ.P. 30(d)(3).  A corporation's opinion does not fall under any of these enumerated exceptions.

Further, contrary to the Defendants' assertions, corporations are capable of having an opinion.  A Rule 30(b)(6) designee does not give his personal opinions, but presents the corporation's "position" on the topic.  *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006); *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).  When a corporation produces an employee pursuant to a Rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition.  This extends not only to facts, but also to subjective beliefs and opinions.  *Brazos River Authority*, 469 F.3d at 433.  Therefore, to the extent that On was instructed to refrain from responding because he cannot provide the opinion of a corporation, the objection is overruled and he is required to respond.[15]

## 2.    Attorney-Client Privilege

In addition to being questioned as to the cause of the subject fire, On was also questioned regarding his preparation for the deposition.  He was asked, "for how many days did you meet [with Samsung's lawyers] before this deposition?, Did you meet with anyone other than Samsung lawyers to prepare yourself for this deposition", "Did you communicate with [Mr. Han Lim, Samsung's

---

[15]The Court notes that during the oral hearing on this motion, the Court sustained the Plaintiff's objection to this question pursuant to the work product doctrine.  Upon further consideration, however, the Court finds that the work product doctrine is not applicable.  *See* Section C, *infra*.

designer of the ASW06LKS1] verbally or in writing or both", and "[w]hen did you speak with him or receive a written communication from him."  (R. Doc. 92-2, p. 17.)  Mr. On was also asked, "what information did [Mr. Han Lim] provide to you" and "[y]our meetings or discussions with [Mr. Han Lim] were in preparation for this deposition, weren't they?"  *Id.*  To each of these questions, On was instructed not to respond.

The Defendants contend that On was instructed not to respond to the subject questions during the deposition because the questions posed encroached on the attorney-client privilege.  As noted above, the Defendants did not specifically lodge their objections after each question, and instead merely stated "objection" and instructed On to refrain from responding.

State law applies to considerations of attorney-client privilege in a diversity case.  *Dunn v. State Farm & Casualty Co.*, 927 F.2d 869, 875 (5th Cir. 1991).  Louisiana attorney-client privilege law is codified at Louisiana Civil Code of Evidence Article 506(B).  It provides that a client has the privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client.  La. Code of Evid. Art. 506(B).  A "confidential communication" is not intended to be disclosed to anyone other than "[t]hose whom disclosure is made in furtherance of obtaining or rendering professional legal services for the client."  La. Code of Evid. Art. 506(A)(5)(a).

In Louisiana, confidential communications between the following individuals are privileged: (1) between a client or a representative of the client and the client's lawyer or a representative of the lawyer; (2) between the lawyer and a representative of the lawyer; (3) by the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest; (4) between representatives of the client or between the

client and a representative of the client; (5) among lawyers and their representatives representing the same client; and (6) between representatives of the client's lawyer.  La. Code of Evid. Art. 506(B).  Here, the Defendants contend that the first and fourth categories are applicable.

A "representative of a client" is defined as (1) a person with the "authority to obtain professional legal services, or to act on advice so obtained, on behalf of the client," or (2) a person "who makes or receives a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client."  La. Code of Evid. Art. 506 (A)(2).

There is no evidence in the record that establishes that On had the authority to obtain professional legal services or to act on legal advice so obtained on behalf of the Plaintiffs.  *See* La. Code o f Evid. Art. 506(A)(2)(a).  The burden to establish that communications are subject to the attorney-client privilege lies with the Defendants, the party asserting the privilege.  *Hodges, Grant & Kaufman v. U.S. Gov.*, 768 F.2d 719, 721 (5th Cir. 1985).  Therefore, the Defendants have failed to establish that On is a representative under the first prong, such that his communications are subject to protection under the Louisiana's attorney-client privilege.

Alternatively, On's communications could be subject to attorney-client privilege if he made or received confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client.  La. Code of Evid. Art. 506(A)(2)(b).  In *Kiln Underwriting Ltd. v. Jesuit High School of New Orleans*, Nos. 06-4530, 06-0506, 06-05057, 2008 WL 108787 (E.D. La. 2008)(Roby, J.), this Court found that an individual did not qualify as a representative under this prong because there was no evidence that the individual had the authority to retain counsel or even that the communications concerned involved such efforts.  Without such evidence, this Court found that the party asserting the privilege did not satisfy the second prong

12

because it failed to demonstrate that the purpose of the communication was to effectuate legal representation.

Here, the Defendants have similarly failed to meet their burden. There is no evidence in the record, and the Defendants made no arguments, that On had the authority to retain counsel or that their communications concerned such efforts. The Defendants have failed to demonstrate that any of the communications at issue were for the purposes of effectuating legal representation

Because the attorney-client privilege was inapplicable, On was improperly instructed to refrain from responding. As such, he is ordered to respond.[16]

### C.      Work Product Privilege

The Court similarly finds that the work product privilege is not applicable to any of the questions enumerated above. Under Federal Rule of Civil Procedure 26, "[o]rdinarily, a party may not discovery *documents and tangible things* that are prepared in anticipation of litigation . . ." Fed.R.Civ.P. 26(b)(3)(A)(Emphasis added); *see also In re Kaiser Aluminum & Chem. Co.*, 214 f.3d 586, 593 (5th Cir. 2000)(The work product privilege extends to and protects *documents* prepared in anticipation of litigation)(emphasis added). Here, the Plaintiffs seek neither documents or tangible things, and instead seeks testimony which is unrelated to any documents or tangible item. As such, the objections are overruled and On is ordered to respond.

### IV.     Conclusion

---

[16]The Court further notes that even if On was a representative of the client many of these questions could not invoke the attorney-client privilege as they did not concern confidential communications. For example, On was asked "for how many days did you meet [with Samsung's lawyers] before this deposition?" (R. Doc. 92-5, p. 17.) This question relates only to how many days there were communications and did not seek the substance of his communications with Samsung's lawyers. Similarly, On was asked, "did you meet with anyone other than the Samsung lawyers to prepare yourself for this deposition?" (R. Doc. 92-2, p. 17.) This question required a yes or no response, and did not require On to disclose the substance of any such communications. On was further asked, "did you communicate with [Han Lim] verbally or in writing or both." (R. Doc. 92-2, p. 17.) Again, this question does not relate to confidential communications and instead relates to the mode of communication, i.e. verbal or writing.

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion to Compel Discovery (R. Doc. 92)** is hereby

**GRANTED IN PART** and **DENIED IN PART:**

- **IT IS DENIED** insofar as the Plaintiffs seek to compel more complete responses to the requests for production as drafted in the discovery requests.

- **IT IS GRANTED** insofar as the Court compels the Defendants to provide supplemental responses to the Plaintiff's requests for production.  Such responses, however, shall be limited to fires arising from control boxes in 5,000, 6,000, or 8,000 BTU air conditioners which were manufactured subject to the 2004 UL standard.  Such supplemental responses shall be produced within **fourteen (14) days** of the signing of this Order.

- **IT IS GRANTED** insofar as Jeong Hwan On is ordered to respond to contested deposition questions within **fourteen (14) days** of the signing of this Order.

New Orleans, Louisiana, this 14th day of July 2011

**KAREN WELLS ROBY**
**UNITED STATES. MAGISTRATE JUDGE**

14