UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH JOHNSON, INDIVIDUALLY AND ON BEHALF OF DEVONTRE YOUNG, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-1146**<br>**c/w 10-1549** |
| **SAMSUNG ELECTRONICS AMERICA, INC., ET AL** | **SECTION "K"** |

## ORDER AND OPINION

Before the Court is the "Motion to Exclude the Testimony of Michael Schulz" filed on behalf on behalf of defendants General Electric Company, Samsung Electronics Co., Ltd, Wal-Mart Stores Inc., Wal-Mart Stores Louisiana, LLC, Samsung Fire & Marine Ins. Co., Ltd, and Electric Insurance Company (Doc. 164). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, **DENIES** the motion.

BACKGROUND

These consolidated suits arise from a mobile home fire which claimed the life of two children and injured two other children. In these products liability suit plaintiffs contend that the fire originated in or was caused by a defective window air conditioning unit which had been purchased from defendant Wal-Mart and was designed and manufactured by defendant Samsung Electronics Co., Ltd. under defendant General Electric's brand name.

Plaintiffs retained Michael H. Schulz to investigate the fire and determine its origin. Plaintiffs intend to offer Mr. Schulz as an expert on the cause and origin of the fire. Plaintiffs have also retained Judd Clayton as an electrical engineering expert and Dr. Rex McLellan as a metallurgy

expert. Defendants move to exclude the testimony of Mr. Schulz on a number of grounds.

## ANALYSIS

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence. " *Hidden Oaks Limited v. City of Austin*, 138 F. 3d 1036, 1050 (5th Cir. 1998). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applies to all types of expert testimony. *Kumho Tire,* 526 U.S. at 147, 119 S. Ct. at 1171.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S. Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S. Ct. at 2797. Several factors which may be considered in determining the soundness of the scientific methodology include:

> 1) whether the theory or technique can be and has been tested;
>
> 2) whether the theory or technique has been subjected to peer review and publication;
>
> 3) the known or potential rate of error and the existence and maintenance of standards; and
>
> 4) whether the theory or technique used has been generally accepted.

*Id.* 593-94, 113 S.Ct. at 296-97. These factors "do not constitute a definitive checklist or test." *Kuhmo Tire*, 526 U.S. at 144, 119 S.Ct. at 1175 (internal quotation and citation omitted). Instead, they compose a nonexclusive, flexible test to ascertain the validity or reliability of the methodology employed by the expert. *Id.* The applicability of each factor depends on the particular facts of the case. *Id.*

The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 U.S. at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id., citing United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

Notwithstanding *Daubert*, the Court remains cognizant that "the rejection of expert testimony is the exception and not the rule." Fed.R.Evid. 702 Advisory Committee Notes to 2000 Amendments

Michael Schulz has been a fire and explosion investigator and analyst for more than three decades. He earned a Bachelor of Science degree in Fire & Safety Engineering Technology from the University of Cincinnati and is a graduate of the United States Fire Administration's National Fire Academy, having completed the Fire and Arson Investigation residency program. Additionally he served for many years on the National Fire Protection Association's Technical Committee on

Fire Investigations and has conducted more than 1,000 fire and explosion investigations. As reflected in his curriculum vitae, Mr. Schulz has an extensive list of certifications and memberships in various professional organizations. Doc. 177-2. Ex. A. A more in-depth analysis of Mr. Schulz's qualifications is not necessary; it is readily apparent that he is an experienced fire and explosion investigator and analyst. Defendants have not challenged Mr. Schulz's qualifications.

Defendants seek to exclude Mr. Schulz testimony for the following reasons: (1) he failed to follow the required protocols established in the scientific method and/or the National Fire Protection Association's ("NFPA") guide, NFPA 921, entitled Guide for Fire and Explosion Investigations; (2) he failed to conduct a proper scene analysis resulting in spoilation of evidence; and (3) his "methodology for processing the fire scene and notifying potentially interested parties was flawed and driven by Plaintiff's attorneys, rather than by independent analysis by an 'independent' investigator." Doc. 164-1, p.2. Defendants' challenges will be addressed in turn.

### A. Failure to Follow Required Protocols or NFPA 921

Defendants urge that Mr. Schulz's testimony is not reliable because there is no evidence that he conducted testing to attempt to disprove his hypothesis. Additionally, in support of their contention that Mr. Schulz failed to follow the necessary protocols defendants assert that his " Report offers no evidence of any data, measurements, observations or photographs taken of the specific fire incident in question, or how any of the data gathered was tested in any way by Schulz, or how any test results either support or refute Schulz's hypothesis." Doc. 164-1, p. 12.

The test of reliability in *Daubert* in flexibility and "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire,* 526 U.S. at 141, 119 S.Ct. at 1167. To put it another way, *Daubert* does not "require all experts in every case to back

5

his or her opinion with independent tests that unequivocally support his or her conclusions." *More, JB, Inc. v. Nutone, Inc.*, 2007 WL 4754173 at *12 (W.D. Tex. March 21, 2007).  The parties agree that NFPA established the recognized standards for fire investigation, and defendants do not dispute that NFPA 921, § 18.6.4 provides, in pertinent part,  that "[h]ypothesis testing may include: any application of fundamental principles of science, physical experiments or testing, cognitive experiments, analytical technics and tools, and systems analysis."  Although Mr. Schulz's report does not, include a step by step description of his investigation and analytical process, the report indicates and his affidavit declares that Mr. Schultz did the following: 1) visited the burned premises twice, 2) observed and "evaluated physical fire effects and fire patterns within the hostile fire incident scene," 3) "conducted a heat and flame vector analysis," 4) "processed the hostile fire incident, " "documented the hostile fire incident scene, and 5) "collected and preserved relevant physical evidence from the hostile fire incident scene."  Doc. 164-2, p. 23-24.  Additionally the report indicates that Mr. Schulz "monitored and participated in a number of laboratory inspections and examinations of physical evidence" and "participated in interviews with surviving family members and occupants" of the manufactured home which burned.  Id. at p. 24.  He also reviewed large numbers of records and documents including deposition testimony of more than two dozen individuals and interviewed plaintiff Elizabeth Johnson, the owner of the mobil home.  Mr. Schulz's affidavit indicates that he "evaluated the results of the arc mapping conducted by Mr. Clayton and Dr. McLellan," evaluated "the results of numerous laboratory examinations conducted by Mr. Clayton and Dr. McLellan," and evaluated the results of the full scale burn testing conducted by Mr. Clayton."  Doc. 177-1, ¶ 123.   "An expert may rely on the reliable opinion of another expert in forming his own opinion."  *Mason v. Safeco Insurance Company of America,* 2010 WL 3341582 at

*8 (E.D. Mo. August 23, 2010), citing Fed.R.Evid. 702 Advisory Committee Notes to 2000 Amendments ("The term 'data' is intended to encompass the reliable opinions of other experts.").[1] Given Mr. Schulz's extensive experience in fire investigation and considerable involvement with professional organizations, including his long tenure on the NFPA's Technical Committee on Fire Investigation during which he co-authored NFPA 921, and the investigative acts which he undertook, the Court concludes that his failure to conduct independent testing with respect to his theory does not render his testimony scientifically unreliable.

Defendants also urge that Mr. Schulz used flawed methodology in conducting the fire scene investigation and failing to demonstrate that he considered and eliminated potential ignition sources other than the identified window air conditioning unit. Specifically, defendants point to Mr. Schulz's alleged failure to eliminate other electrical items and components as potential ignition sources.

With respect to potential electrical ignition sources, plaintiffs represent that Mr. Schulz "is not responsible for potential ignition sources that are electrical" and that potential electrical ignition sources "fall within the purview of Judd Clayton." Because plaintiffs do not intend to offer Mr. Schulz as an expert with respect to potential electrical sources, the Court need not address defendant's challenges to Mr. Schulz's methodology based on his failure to investigate potential electrical ignition sources.

The Court find that defendants' assault on Mr. Schulz's methodology based on his alleged

---

[1] The Court notes acknowledges that there are pending motions in limine seeking to exclude the testimony of Dr. McLelland and Mr. Clayton. To the extent that Mr. Schulz relies on expert opinions that of Dr. McLelland and Mr. Clayton which the Court may later exclude after reviewing the pending motions in limine as to their testimony, Mr. Schulz's testimony relying on any stricken opinions will be excluded.

failure to eliminate non-electrical potential sources of ignition lacks merit.  It is true that Mr. Schulz's report does not identify the non-electrical potential sources of ignition which were eliminated in the course of Mr. Schulz's investigation.  However, in his affidavit, Mr. Schulz described with particularity why and how he eliminated smoking materials and candles as potential sources of ignition.  That explanation is sufficient to determine that with respect to the eliminating potential non-electrical ignition sources, Mr. Schulz's methodology was not flawed.

Defendants also assert that Mr. Schulz's methodology is flawed "as to the entities he claims he placed on notice of the loss on May 30, 2009." Doc. 164-1. p. 16.  This criticism, even if valid, is insufficient to render Mr. Schulz's testimony unreliable.  Defendants will undoubtedly cross examine Mr. Schulz exhaustively concerning his alleged failure to notify Wal-Mart of the loss and his reasons for failing to notify General Electric of the loss.  It falls within the province of the jury to determine whether Mr. Schulz notified Wal-Mart of the loss and to determine the effect, if any, of Mr. Schulz's failure to notify General electric of the loss.

Defendants also seek to exclude Mr. Schulz's testimony asserting that it is not scientifically reliable because his conclusions were influenced by "preconceived notions, expectation bias, and confirmation bias" contrary to the standards set out in various section of NFPA 921.  Doc. 164-1, p. 17.  The gravamen of this challenge is that Mr. Schulz  "focused on the window air conditioning unit almost immediately upon his initial inspection of the fire scene . ..." Id.  Having concluded that Mr. Schulz did not use flawed methodology in reaching his opinions, the Court finds that this contention properly goes to the weight to be accorded to Mr. Schulz's testimony, not the admissibility of the testimony itself.  Defendants may cross examine Mr. Schulz with respect to alleged presumptions or expectations he had with respect to the window air conditioning unit at the

time of his initial inspection of the burned premises. It is for the jury to decide whether Mr. Schulz had such presumptions and expectations with respect to the window air conditioning unit, and if he did, the effect of that on the credibility of his testimony.

Lastly, defendants urge that Mr. Schulz's methodology was improper and unreliable because of manner in which he processed the fire scene resulted in spoilation of evidence. Significantly, defendants do not urge that any critical evidence was destroyed or lost as a result of the methodology employed by Mr. Schulz, nor do defendants urge that they were otherwise prejudiced by the method in which Mr. Schulz processed the fire scene. Neither Rule 702 of the Federal Rules of Civil Procedure nor *Daubert* require specific actions be taken to validate an "expert" witnesses investigation. Defendants' criticisms of Mr. Schulz's processing of the fire scene go to the weight to be accorded to his testimony; the criticisms do not go to the admissibility of that testimony. As noted previously, the Court's role as gatekeeper:

> does not replace the traditional adversary system and the place of the jury within the system. See Daubert, 509 U.S. at 596. As the Daubert Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. (citing Rock v. Arkansas, 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss. 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting Viterbo v. Dow Chemical Co., 826 F.2d 420, 422 (5th Cir. 1987)).

*Scordill v. Louisville Ladder Group*, 2003 WL 2247981 at *3.

9

The jury, as the fact finder will determine whether the alleged defects in Mr. Schulz's processing of the scene warrant disregarding his testimony or lessening the weight to be accorded to that testimony.  Accordingly,

**IT IS ORDERED** that the "Motion to Exclude the Testimony of Michael J. Schulz" is **DENIED.**

New Orleans, Louisiana, this 14th day of September, 2011.

UNITED STATES DISTRICT JUDGE<br>STANWOOD R. DUVAL, JR.