UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ELIZABETH JOHNSON, INDIVIDUALLY                     CIVIL ACTION
AND ON BEHALF OF DEVONTRE
YOUNG, ET AL

VERSUS                                              NO. 10-1146
                                                    c/w 10-1549

SAMSUNG ELECTRONICS AMERICA, INC.,                  SECTION "K"
ET AL

ORDER AND OPINION

Before the Court are the "Motion to Exclude the Testimony of Judd Clayton" (Doc. 163), the "Motion to Strike Supplemental Report and Certain Testimony of Judd Clayton Beyond the Scope of His Expert Report" (Doc. 157), and the "Motion in Limine to Strike the Affidavit of Judd Clayton" (Doc. 191), all filed on behalf of defendants General Electric Company, Samsung Electronics Co., Ltd.,[1] Wal-Mart Stores Inc., Wal-Mart Stores Louisiana, LLC, Samsung Fire & Marine Ins. Co., Ltd, and Electric Insurance Company.  Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, **DENIES** each of the motions.

A.  BACKGROUND

These consolidated suits arise from a mobile home fire which claimed the life of two children and injured two other children.  In these products liability suits plaintiffs contend that the fire originated in or was caused by a defective window air conditioning unit which had been

---

[1] Samsung Electronics Co., Ltd. is not identified as a mover in the "Motion to Strike Supplemental Report and Certain Testimony of Judd Clayton Beyond the Scope of His Expert Report" (Doc. 157); however, given the alignment of Samsung Electronics Co., Ltd.'s interest with those of the other movers with respect to the motions addressed herein, the Court assumes that the omission of Samsung Electronics Co. Ltd. as a mover results from inadvertent error.

purchased from defendant Wal-Mart and was designed and manufactured by defendant Samsung Electronics Co., Ltd. under defendant General Electric's brand name.

Plaintiffs retained Judd Clayton to evaluate "the cause (source of ignition and potential failure mechanism which led to the same) of the subject fire[,]" and plaintiffs intend to offer Mr. Clayton as an expert in that area.   Doc. 184, Ex. A, ¶6.  Plaintiffs also retained Michael Schulz as an expert in the cause and origin of the fire  and Dr. Rex McLellan as a metallurgy expert.

Judd Clayton issued his expert report on July 5, 2011; plaintiffs disclosed that report to defendants on July 6, 2011.  On July 25, 2011 plaintiffs disclosed a supplemental report authored by Mr. Clayton and dated July 24, 2011 to defendants.  Among other things, that supplemental report identified articles related to peer reviewed publications  addressing the "last strand" effect as well as additional discovery material reviewed by Mr. Clayton  and included the results of exemplar testing on eight air conditioners.  Thereafter, on July 31, 2011, defendants deposed Mr. Clayton.

Mr. Clayton has opined that the fire ignited "from an electrical failure of the High Speed (red) fan motor wire bundled within the confines of the A/C fan motor wiring harness[,]" that the wiring harness and conductors "were subjected to excessive stress/strain/vibration" which "created a hazardous environment for both the strain relief, as well as the associated conductors, and each suffered from ill effects of fatigue" which in turn "create[d] a habitat for hostile resistive heating effects and subsequent ignition of adjacent combustible materials."  Doc. 153-2, Ex. C, ¶3.  He stated that a "last strand" effect led to the fire ignition.  See Id. at ¶23.

Defendants filed their motion to exclude Mr. Clayton's testimony on August 23, 2011. Plaintiffs filed their opposition to that motion on September 2, 2011.  In connection with their opposition to the motion to exclude, plaintiffs filed an affidavit by Mr. Clayton.  Almost three weeks

after plaintiffs filed their opposition to the motion to exclude Mr. Clayton's testimony which included his affidavit, defendants filed a motion in limine to strike Mr. Clayton's affidavit.

B. "Motion to Strike Supplemental Report and Certain Testimony of Judd Clayton Beyond the Scope of His Expert Report" and "Motion in Limine to Strike the Affidavit of Judd Clayton"

It is well established that a district court has broad discretion to enforce a scheduling order issued pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *Turnage v. General Electric Co.*, 953 F.2d 206, 208 (5th Cir. 1992); *Geiserman v. McDonald*, 893 F.2d 787, 790 (5th Cir. Cir. 1990). Defendants urge that Mr. Clayton's supplemental report and affidavit violate the Court's scheduling order which established July 6, 2011 as the deadline for plaintiffs to disclose their expert's opinions to defendants. The Court is not persuaded that exclusion of the supplemental report or the affidavit is warranted. Although the supplemental report and the affidavit contained some new information with respect to peer reviewed articles and additional testing conducted by Mr. Clayton, they did not introduce an entirely new theory of liability. Mr. Clayton's initial report addressed the "last strand" theory.

Moreover, defendants have not established any prejudice resulting from the supplemental report or the affidavit. In a telephone status conference held September 1, 2011, the Court, suggested to defendants that it would be prudent to schedule an additional deposition of Mr. Clayton to question him concerning his supplemental report, and a second deposition of Mr. Clayton has now been scheduled. With respect to Mr. Clayton's affidavit, it is significant that defendants did not file their motion to exclude the affidavit for more than two weeks after plaintiff filed the affidavit. That delay belies defendant's assertion that they have been prejudiced by the filing of the affidavit. For these reasons, the Court denies defendants' "Motion to Strike Supplemental Report and Certain Testimony of Judd Clayton Beyond the Scope of His Expert Report" and defendants' "Motion in

Limine to Strike the Affidavit of Judd Clayton."

C.  Motion to Exclude the Testimony of Judd Clayton

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Limited v. City of Austin*, 138 F. 3d 1036, 1050 (5th Cir. 1998).  Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796.  The relevant and reliable standard announced in *Daubert* for scientific expert testimony applies to all types of expert testimony.  *Kumho Tire,* 526 U.S. at 147, 119 S. Ct. at 1171.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony.  The court  "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796.  Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted.  *Id.* at 595, 113 S. Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be

4

applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S. Ct. at 2797. Several factors which may be considered in determining the soundness of the scientific methodology include:

> 1) whether the theory or technique can be and has been tested;
>
> 2) whether the theory or technique has been subjected to peer review and publication;
>
> 3) the known or potential rate of error and the existence and maintenance of standards; and
>
> 4) whether the theory or technique used has been generally accepted.

*Id.* 593-94, 113 S.Ct. at 296-97. These factors "do not constitute a definitive checklist or test." *Kuhmo Tire*, 526 U.S. at 144, 119 S.Ct. at 1175 (internal quotation and citation omitted). Instead, they compose a nonexclusive, flexible test to ascertain the validity or reliability of the methodology employed by the expert. *Id.* The applicability of each factor depends on the particular facts of the case. *Id.*

The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 U.S. at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id., citing United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence."

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

Notwithstanding *Daubert*, the Court remains cognizant that "the rejection of expert testimony is the exception and not the rule." Fed.R.Evid. 702 Advisory Committee Notes to 2000 Amendments.`

Judd Clayton graduated from Texas A&M University with a degree in electrical engineering. He has worked in the electrical field for more than 39 years. During his career he has investigated or served as an expert in fire origin and cause determinations more than 1,500 times. Additionally he is a certified Fire and Explosion Investigator and has numerous affiliations with professional

associations. Defendants do not challenge Mr. Clayton's credentials.

Defendants move to exclude Mr. Clayton's testimony contending that it is unreliable because: (1) his opinions are not supported by sufficient evidence and facts, (2) he failed to conduct testing to substantiate his theories or opinions, and (3) his research is not supported by peer reviewed research or studies.

The Court concludes that defendants' challenges to the reliability of Mr. Clayton's testimony are not well founded. Mr. Clayton's conclusions and opinions are sufficiently supported by facts, evidence and testing to satisfy the reliability requirement of *Daubert.* Mr. Clayton reviewed the records and photographs of various state agencies and law enforcement personnel as well as numerous relevant depositions. He reviewed discovery documents, applicable industry guidelines and standards and peer reviewed literature. Additionally he conducted testing on eight exemplar air conditioning units. Specifically Mr. Clayton stated that his opinion with respect to flame propogation is consistent with the factual testimony of LaTerrika Benion and LaShaun Johnson with respect to the "location of the first flames observed from their respective view points within the living room." Doc. 184-1, Ex. A, ¶14. Mr. Clayton further opined that his failure scenario is validated by evidence found on with respect to the "High-Speed fan motor lead" which "exhibits damage characteristic of a progression of a mechanical failure events wherein 25 of the 26 strands (which comprised the No. 20 gauge wire feeding the High-Speed windings of the motor) parted." Doc. 184-1, ¶ 17.

Additionally, Mr. Clayton conducted various testing, the results of which he relies upon in reaching his opinions and conclusions, including various tests on exemplar air conditioners and "Resistive Heating Testing on Exemplar Fan Motor Wiring Harness Sleeve [Utilizing Exemplar

Model ASH06LKS1]." Doc. 184-1, ¶ 22.

Defendants also challenge Mr. Clayton's opinions asserting that they have not been subjected to peer review and publication. The "last strand" theory is not an exotic, unsupported theory. Both "Mechanisms and modes for ignition of low-voltage, PVC-insulated electrotechnical products" authored by Vytenis Babrauskas and "Conditions for Series Arcing Phenomena in PVC Wiring" written by John J. Shea provide peer reviewed support for the "last strand" theory. Defendants urge that the cited articles do not support Mr. Clayton's theory because "the articles deal with glowing connectors, not glowing wires" and because the literature provides that "[t]he ignition of PVC insulation occurred only if the current was between 10 and 20 amps" and the fan motor at issue cannot "physically draw sufficient current (in excess of 10 amps, at minimum) in order for a 'last stand' ignition scenario to be plausible." Doc. 163-1, p. 19-10. However, in his affidavit Mr. Clayton indicates that other peer reviewed literature reports that "glowing connections were created with currents of 0.25 amps and 0.53 amps and he has also stated that he has personally conducted "hundreds of tests (one in particular for this case) wherein .5 amps, or less, can provide more than sufficient power dissipation through a series of resistive heating juncture so as to obtain flaming combustion of adjacent insulating polymeric materials." Doc. 184, Ex. A, ¶21. Defendants' contention that Mr. Clayton's opinions are not supported by peer reviewed studies lacks merit.

In urging that Mr. Clayton's testimony should be excluded as unreliable, defendants cite several cases in which they contend that courts have concluded that Mr. Clayton's testimony is unreliable and urge that his testimony should be excluded for similar reasons in this case. The cases cited by defendants do not support excluding Mr. Clayton's testimony in this case. In *Whirlpool Corp. v. Comacho*, 298 S.W.3d 631 (Tx. 2009), the Texas Supreme Court concluded that Mr.

Clayton's trial testimony in which he opined that there was a design defect in an electric clothes dryer that had caught fire, was legally insufficient to support the jury's verdict in favor of the plaintiffs. In that case, Mr. Clayton developed his theory specifically for litigation and it was not supported by peer reviewed materials. Here, however, the "last strand" theory was not originated by Mr. Clayton, predates this litigation, and is simply being applied in this litigation.

Defendants also rely on *Bush v. Powermate, Inc.*, 2005 WL 1241075 (Tex. App.- Austin) in urging that Mr. Clayton's testimony should be excluded as unreliable. In *Bush* the court of appeals affirmed the district court's decision to exclude testimony by Mr. Clayton regarding the cause of a fire, as well as the testimony of several of plaintiff's other expert witnesses, including Lori Hasselbring and Joe Fowler. The court of appeals affirmed the exclusion of Mr. Clayton's testimony based on his failure to "perform any tests based on the facts of the case," his failure to "review other testing in this case," and the fact that his testimony was "predicated on underlying facts contrary to [plaintiff's] testimony and the evidence of the temperature the generator reached in testing." *Id.* at *7. Additionally, because in forming his opinions Mr. Clayton relied in part on the opinions of Lori Hasselbring and Joe Fowler which were properly excluded by the district court, the appeals court concluded that the district court had not abused its discretion in determining that Mr. Clayton's testimony would not help the jury. In this case, unlike *Bush*, Mr. Clayton's opinion is not predicated on facts inconsistent with a witness's testimony, and as noted previously, Mr. Clayton perfomed various testing in reaching his opinions. Furthermore, Dr. McLellan's opinions and findings, which Mr. Clayton relies upon, in part, in reaching his opinions has not been excluded from evidence.

Defendants also cite *Presley v. Lakewood Engineering and Manufacturing Co.,* 553 F.3d 638

9

(8th Cir. 2009) in asserting that Mr. Clayton's flammability testing was inadequate to support his opinion. In *Presley*, Mr. Clayton was not tendered as an expert. Rather, he simply conducted flammability tests which Raymond Arms, another expert, relied upon in developing an opinion as to the causation of a fire. The court excluded the testimony of Mr. Arms for several reasons, including a determination that the flammability tests conducted by Mr. Clayton were inadequate to support Mr. Arm's theory. The court found no fault with the testing per se only the application of the results to support a theory not developed by Mr. Clayton. That is not the situation present herein. Because the cases involving Mr. Clayton cited by defendants are no analogous to this case they are not determinative.

Defendants will have the opportunity to, and no doubt will, vigorously cross-examine Mr. Clayton with respect to the specifics of factual and scientific basis for his opinions and put before the jury their criticisms of Mr. Clayton's methods and opinions. Those matters are best "fleshed out" at trial and left for the jury to ultimately determine whether to credit Mr. Clayton's methods and opinions. As stated previously,

> [The court's] role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

*Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3.

For the foregoing reasons, there are sufficient facts, evidence, testing and peer reviewed support to satisfy the reliability requirements of *Daubert* with respect to Mr. Clayton's testimony. Accordingly, the motion to exclude Mr. Clayton's testimony is DENIED.

New Orleans, Louisiana, this 4th day of October, 2011.

                                            STANWOOD R. DUVAL, JR.
                                     UNITED STATES DISTRICT JUDGE