## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH JOHNSON, INDIVIDUALLY AND ON BEHALF OF DEVONTRE YOUNG, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-1146** <br> **c/w 10-1549** |
| **SAMSUNG ELECTRONICS AMERICA, INC., ET AL** | **SECTION "K"** |

## ORDER AND OPINION

Before the Court are  the "Motion to Exclude the Testimony of Rex McLellan, PhD" (Doc. 162), and the "Motion in Limine to Strike the Affidavit of Rex McLellan" (Doc. 192), filed on behalf of  defendants General Electric Company, Samsung Electronics Co., Ltd., Wal-Mart Stores Inc., Wal-Mart Stores Louisiana, LLC,[1] Samsung Fire & Marine Ins. Co., Ltd, and Electric Insurance Company.   Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, **DENIES** the motions.

A.  BACKGROUND

These consolidated suits arise from a mobile home fire which claimed the life of two children and injured two other children.  In these products liability suits plaintiffs contend that the fire originated in or was caused by a defective window air conditioning unit which had been purchased from Wal-Mart and was designed and manufactured by defendant Samsung Electronics Co., Ltd. under defendant General Electric's brand name.

---

[1] Subsequent to the filing of the motion to exclude Dr. McLellan's testimony, the Court dismissed plaintiffs' claims against both Wal-Mart entities.

Plaintiffs retained Dr. Rex McLellan to conduct a metallurgical analysis of artifacts collected from the fire scene, and plaintiffs  intend to offer him as an expert in metallurgy.   Plaintiffs also retained Michael Schulz as an expert in the cause and origin of the fire  and Judd Clayton as an expert in "the cause (source of ignition and potential failure mechanism which led to the same) of the subject fire.  Doc. 184, Ex. A, ¶6.

Defendants filed their motion to exclude Dr. McLellan's testimony on August 23, 2011.  Plaintiffs filed their opposition to that motion on September 2, 2011.  As part plaintiffs' opposition to defendants' motion, plaintiffs filed an affidavit executed by Dr. McLellan.   Almost three weeks after plaintiffs filed Dr. McLellan's affidavit defendants filed a motion in limine to strike the affidavit.

B. "Motion in Limine to Strike the Affidavit of Rex McLellan"

It is well established that a district court has broad discretion to enforce a scheduling order issued pursuant to Rule 16(b) of the Federal Rules of Civil Procedure.  *Turnage v. General Electric Co.*, 953 F.2d 206, 208 (5th Cir. 1992); *Geiserman v. McDonald*, 893 F.2d 787, 790 (5th Cir. 1990).  Defendants urge that Dr. McLellan's affidavit violates the Court's scheduling order which set July 6, 2011 as the deadline for plaintiffs to disclose their experts' opinions to defendants.

Defendants urge that the affidavit includes "new and different opinions and conclusions not contained in McLellan's Rule 26 expert report dated July 5, 2011" and also assert that the new opinions and conclusions were not addressed in Dr. McLellan's deposition.  Doc. 192-1, p.1.  The affidavit includes references to NFPA 921 Guide for Fire & Explosion Investigations, which was not previously referenced in Dr. McLellan's report.  However, defendants do not claim to be unfamiliar with NFPA 921.  Nor do defendants cite any specific prejudice flowing from Dr.

McLellan's references to NFPA 921.  Furthermore, no entirely new theories were introduced in Dr. McLellan's affidavit, and defendant does not articulate any prejudice related to Dr. McLellan's references in the affidavit to the "last strand" phenomenon.   The Court also finds that the more than two week delay between defendants' receipt of the affidavit and their filing of the motion to strike the affidavit significantly undermines defendants' protestations of prejudice.  For these reasons, the Court denies defendants' "Motion in Limine to Strike the Affidavit of Rex McLellan."

C.  Motion to Exclude the Testimony of Rex McLellan

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence."  *Hidden Oaks Limited v. City of Austin*, 138 F. 3d 1036, 1050 (5th Cir. 1998).  Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999).  *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable.  *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796. The relevant and reliable standard for scientific expert testimony announced in *Daubert* applies to all types of expert testimony.  *Kumho Tire,* 526 U.S. at 147, 119 S. Ct. at 1171.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court  "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing

to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796.  Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted.  *Id.* at 595, 113 S. Ct. at 2796.  This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology.  In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate."  *Id.* at 595, 113 S. Ct. at 2797. Several factors which may be considered in determining the soundness of the scientific methodology include:

1) whether the theory or technique can be and has been tested;
2) whether the theory or technique has been subjected to peer review and publication;
3) the known or potential rate of error and the existence and maintenance of standards; and
4) whether the theory or technique used has been generally accepted.

*Id.*  593-94, 113 S.Ct. at 296-97.   These factors "do not constitute a definitive checklist or test." *Kuhmo Tire*, 526 U.S. at 144, 119 S.Ct. at 1175 (internal quotation and citation omitted).  Instead, they compose a nonexclusive, flexible test to ascertain the validity or reliability of the methodology employed by the expert.  *Id.*  The applicability of each factor depends on the particular facts of the case.  *Id.*

The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy.  *Daubert*, 509 U.S. at 591.  Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual

dispute.  *Id., citing United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985).  Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony.  *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998).  To meet this burden, a party cannot simply rely on its  expert's assurances that he has utilized generally accepted scientific methodology.  Rather, some objective, independent validation of the expert's methodology is required.  *Id.*  Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system.  *See Daubert*, 509 U.S. at 596.  As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of  attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)).  The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions.  As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

Notwithstanding *Daubert*, the Court remains cognizant that "the rejection of expert testimony is the exception and not the rule." Fed.R.Evid. 702 Advisory Committee Notes to 2000 Amendments.

Dr. Rex McLellan earned a PhD in metallurgy from Leeds University.  Since graduating he

has worked in the fields of metallurgy and material science for almost forty years.  He is currently

a full professor of material science at Rice University.  Additionally, Dr. McLellan is a licensed

professional engineer in Texas.

After examining various items from the fire scene, Dr. McLellan opined:

- one end of a fan motor lead (Item 2.2) exhibits "porosity and necking" (Doc. 179-3, Ex. 2, ¶ 3;
- "Item 2.2 exhibited features that showed it had suffered the effects of heat more so than its sister 4 conductors in the area approaching their entry into the fan motor housing" (Doc. 179-1, Ex. A, ¶ 18;
- "Item 2.2 conductor exhibits a thicker bright green corrosion product layer than its sister conductors" (Id.); and
- Photographs of Item 2.2 and the mated end of Item 2.2 "show enhanced corrosion product on the high speed conductor compared to the other four conductors" and "show evidence of a high temperature event on that conductor above and beyond the effects of invasive heating from the fire." (Id. at ¶ 24).

Additionally Dr. McLellan opined that the necking and porosity on the fan motor lead (Item 2.2)

"indicates that localized heating has been occurring at the vicinity of the 'rupture.'" Doc. 179-3, Ex.

A-2, p. 10.  He further stated that his physical findings with respect to Item 2.2 are "consistent with

the 'last strand' mechanism of localized heating in a conductor subjected to a cyclic (vibrational)

loading and that "the 'last strand' mechanism of fire ignition is bolstered by the observation that one

strand visible in Item 2.2 shows the phenomenon of necking or tapering."  Doc. 179-1, Ex. A, ¶ 19.

In analyzing the reliability of Dr. McLellan's opinions, the Court notes that plaintiff has

conceded that Dr. McLellan is not being offered as an expert about the origin or cause of the fire.

The Court concludes that Dr. McLellan's opinions do not address the issue of the causation of the

fire, and he will not be permitted to testify concerning causation of the fire.

Defendants seek to exclude Dr. McLellan's testimony contending that it is unreliable because: (1) his opinions are not supported by sufficient evidence and facts, (2) his opinions "have not and cannot" be verified through testing, and (3) his opinions have not been subjected to peer review. Defendants' contentions that Dr. McLellan's testimony is unreliable lacks merit.

Dr. McLellan's opinions are based on identification of anomalies in pieces of evidence recovered from the fire scene, a metallurgical survey of that evidence, and application of general principles of metallurgy to the physical findings and anomalies in the evidence. Thus, the cornerstone of Dr. McLellan's opinions appear to be his personal observations of the condition and anomalies of the fire scene evidence. Given the bases for Dr. McLellan's opinions, his failure to review "deposition transcripts, other photographs, or discovery materials" in connection with formulating his opinions, does not undermine the reliability of those opinions. For the same reason, defendants' criticisms of Dr. McLellan's failure to test his opinions or to have them peer reviewed are unavailing.

In urging that Dr. McLellan's failure to test his opinions renders his opinions unreliable and therefore excludable, defendants cite cases in which other federal courts have either excluded testimony by Dr. McLellan or affirmed a ruling excluding his testimony. In *Sumner v. Biomet, Inc.*, 2010 WL 4736320 (M.D. Ga. 11/16/10), a suit seeking damages for an alleged manufacturing defect in a hip prosthesis, the district court excluded as unreliable, Dr. McLellan's testimony concerning "the particle ejection theory." The district judge characterized the theory as "novel" and noted that the theory had never been tested, peer reviewed, or validated in any way. *Id.* at \*6. The district judge excluded the testimony, noting that to be admissible, "there must be some basis for the Court to find that the theory or method is reliable, and there is simply no basis here." *Id.* The appellate

court affirmed stating in pertinent part:

> The district court also did not abuse its discretion in considering the fact that De. McLellan's theory appears to have been arrived at for the purposes of this litigation, weighing it heavily against the admissibility of Dr. McLellan's opinion.  Dr. McLellan has never before been involved in a case involving particle ejection from a metal prosthesis.   He has never tested or published anything regarding his theory.   There is no evidence that Dr. McLellan developed this theory during research conducted independent of this theory.

*Sumner v. Biomet, Inc.*, 2011 WL 2749640, *7 (11th Cir. 7/15/11).  The facts and circumstances of *Sumner* are vastly different than those herein.  In *Sumner* Dr. McLellan had a much broader role than he has in this case.  There he examined the prosthetic device at issue and based on his physical findings developed a new theory to explain his physical findings.  Here Dr. McLellan's role is much more limited.  He conducted a physical and metallurgical analysis of items previously identified as having been subjected to and damaged by heat and determined whether his findings were consistent with the "last strand" phenomenon, a theory that existed independently of this case and which has been scientifically recognized by others.  *Sumner* is inapplicable here.

Nor does *Rivero v. Sunbeam Products, Inc.*, 2010 WL 646460 (W.D. Tex. 2/19/10), support defendants' contention that Dr. McLellan's testimony should be excluded in this case.  In *Rivero* the plaintiffs retained Dr. McLellan to study the metallurgical aspects of fire debris in a products liability suit involving a space heater.  The defendant moved to exclude certain opinions expressed by Dr. McLellan due to concern "about the scope of Dr. McLellan's testimony." *Id.* at *1.  Contrary to defendants' contention in this case, the district court in *Rivero* did not exclude a portion of Dr. McLellan's testimony due to his "lack of testing and lack

of qualifications." Doc. 162, p. 17. Rather, the district court struck Dr. McLellan's opinions "on the cause or point of origin of the fire" after noting that plaintiffs had "already stipulated that Dr. McLellan [would] not render any expert opinion on the cause or point of origin of the fire." *Rivero*, 2010 WL 646460 at *2. Thus, in *Rivero* the district court never addressed the issue of Dr. McLellan's opinion with respect to the cause or point of origin of the fire.

Defendants also cite *Hafenstienn v. BMW of North America, L.L.C.*, 2005 WL 5988651 (S.D. Tex. 4/7/05) in asserting that Dr. McLellan's testimony should be excluded. There the district court excluded Dr. McLellan's opinions concerning the crashworthiness of a vehicle. The defendants in that case acknowledged that Dr. McLellan's first opinion "may be reliable because it depends upon McLellan's measurements of spot welds[,]" but challenged his testimony because he "extrapolate[d] from his measurements to the second, third, fourth, and fifth opinions about the crashworthiness of the [vehicle]." *Id.* at *3. Thus, the unreliability flowed from extrapolations, not Dr. McLellan's original measurements. Because Dr. McLellan's testimony in this case is not based on extrapolations, *Hafenstienn* is not instructive. In summary, the cases involving Dr, McLellan cited by defendants in support of excluding Dr. McLellan's testimony do not support exclusion of Dr. McLellan's testimony in this case.

On cross examination, defendants can question, Dr. McLellan at length about his examinations of the physical evidence from the fire scene and his failure to conduct specific testing and to subject his finding to peer review. As stated previously,

> [The court's] role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (citing *Rock*

> *v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)).
> The Fifth Circuit has added that, in determining the admissibility of
> expert testimony, a district court must defer to "'the jury's role as the
> proper arbiter of disputes between conflicting opinions. As a general
> rule, questions relating to the bases and sources of an expert's opinion
> affect the weight to be assigned that opinion rather than its
> admissibility and should be left for the jury's consideration.'" *United
> States v. 14.38 Acres of Land, More or Less Sit. in Leflore County,
> Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow
> Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

*Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3. It is within the province of

the jury to evaluate the credibility and reliability of Dr. McLellan's testimony and determine the

weight, if any, to be given to that testimony.

For the foregoing reasons, the Court finds that Dr. McLellan's testimony satisfies the

reliability requirements of *Daubert* . Accordingly, the motion to exclude Dr. McLellan's testimony

is DENIED.

New Orleans, Louisiana, this 6th day of October, 2011.

_____

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE